CARLOS E. NEEDHAM (SBN 202777)
28494 Westinghouse Place
Suite 213
Valencia, CA 91355
Telephone: (661) 843-6175
Facsimile: (661) 430-5595
cneedham@needhamlegal.com

Attorney for Plaintiff
SCRIPSAMERICA, INC.

2014 MAY 22   PM 3: 56

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SCRIPSAMERICA, INC.,

        Plaintiff,

        vs.

IRONRIDGE GLOBAL LLC d/b/a
IRONRIDGE GLOBAL IV, LTD.
JOHN KIRKLAND,
BRENDAN O'NEILL
and DOES NOS. 1-5

        Defendants.

Case No. CV14-03962- MMM (AGRx)

**COMPLAINT FOR**

**(1)   SECURITIES FRAUD**

**(2)   BREACH OF CONTRACT**

**(3)   TORTIOUS BAD FAITH**

**(4)   DECLARATORY RELIEF**

Plaintiff SCRIPSAMERICA, INC. sues IRONRIDGE GLOBAL LLC, JOHN KIRKLAND, and BRENDAN O'NEILL as set forth herein and alleges:

1.    This case arises from a fraudulent scheme by Defendant IRONRIDGE GLOBAL LLC ("IRONRIDGE") and its agents and control persons JOHN KIRKLAND ("KIRKLAND") and BRENDAN O'NEILL ("O'NEILL") to acquire stock of Plaintiff through a fraudulent and deceptive scheme, in which Plaintiff

COMPLAINT

1   agreed to provide a certain value of stock as consideration to IRONRIDGE under a

2   formula based on Plaintiff's stock price.  In order to enrich itself at the expense of

3   Plaintiff and its shareholders, and using a manipulative and deceptive device and

4   contrivance, IRONRIDGE willfully and knowingly artificially manipulated the

5   market price of Plaintiff's stock by dumping shares in order to increase its

6   ownership share in Plaintiff, contrary to its representations to Plaintiff.  By

7   engaging in such conduct, IRONRIDGE and its Defendant directors violated

8   Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and rule

9   10b-5 thereunder, 17 C.F.R. §240.10b-5.  The Defendants' tortious misconduct

10  further violated applicable provisions of state law.

## SUBJECT MATTER JURISDICTION AND VENUE

12        2     This Court has federal question subject matter jurisdiction over this

13  case under 15 U.S.C.  § 78aa  (exclusive jurisdiction in federal court for actions

14  based on alleged violation of SEC Rule 10b-5).   Under 28 U.S.C § 1367, this Court

15  has supplemental jurisdiction over state law claims asserted herein.

16        3.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) and (2).  A

17  substantial part of the acts and omissions giving rise to the claim occurred in this

18  district.  IRONRIDGE is a resident of this district for venue purposes, as it is

19  subject to personal jurisdiction in this district by reason of, among other things,  its

20  substantial and ongoing activities in this district,  including its maintenance of a

21  permanent office in Los Angeles for the conducting of its business. Defendant

22  KIRKLAND, on information and belief, is also a resident of this district for venue

23  purposes as he works out of IRONRIDGE's Los Angeles office per the

24  IRONRIDGE website.  Defendant O'NEILL is listed as working from

25  IRONRIDGE's San Francisco office.

## PARTIES

27        4     Plaintiff SCRIPSAMERICA, INC. ("SCRIPS") is a corporation

28  incorporated under Delaware  law with its principal place of business in

2

COMPLAINT

1   Pennsylvania.  Plaintiff, which is in the business of distributing pharmaceuticals, is

2   a public company whose stock is traded  over-the-counter ("OTC") as "SCRC."

3         5.     Defendant  IRONRIDGE GLOBAL PARTNERS LLC, which does

4   business under the name IRONRIDGE GLOBAL IV, LTD., ("IRONRIDGE")  is a

5   limited partnership existing under Delaware law with its principal place of business

6   in California.

7         6.     JOHN KIRKLAND is a managing director and principal of

8   IRONRIDGE, and on information and belief is a resident of California and this

9   judicial district.

10        7.     BRENDAN O'NEILL is also a managing director and principal of

11  IRONRIDGE and on information and belief is a resident of California.

12        8.     DOES NOS. 1-5 are other entities or persons who are responsible for

13  the breaches and/or wrongs described herein.

14        **FACTUAL ALLEGATIONS**

15        9.     IRONRIDGE is in the business of exploiting an exemption from the

16  registration requirements of the Securities Act of 1933, namely the section 3(a)(10)

17  "court approval" exemption.  15 U.S.C. §77c(a)(10), ("section 3(a)(10)") exempts

18  from registration requirements securities issued "in exchange for" other

19  "outstanding securities, claims or property interests" so long as the fairness of the

20  exchange is "approved" after notice to interested parties "by any court…."   The

21  court approval exemption allows for the issuance of shares by an issuer to

22  IRONRIDGE without registration, which shares are immediately and freely

23  tradeable without normally applicable restrictions such as a six-month holding

24  period.

25       10.    In its dealings with Plaintiff, IRONRIDGE used its business model as

26  part of a plan, scheme, and course of conduct which was intended to and did (1)

27  acquire shares in Plaintiff in a transaction induced by fraud; (2) make untrue

28  statements of material fact and omit to state material facts necessary to make its

1   statements not misleading; (3) artificially deflate and manipulate the price of

2   Plaintiff's stock; and (4) engage in acts, practices and a course of business which

3   operated as a fraud and deceit upon the Plaintiff (and others); all in violation of

4   Section 10(b) of the Securities Exchange Act and Rule 10b-5.

5       11.   It was a part of the scheme to defraud and manipulate that

6   IRONRIDGE, through its officers, directors and agents KIRKLAND and

7   O'NEILL, in several meetings and telephone calls in August and September of

8   2013, presented what was portrayed as an advantageous business deal to Robert

9   Schneiderman, Chief Executive Officer of Plaintiff.   The first interaction between

10  the parties was a telephone call on August 28, 2013, in which KIRKLAND and

11  O'NEILL explained to Mr. Schneiderman that IRONRIDGE could pay off

12  Plaintiff's accounts payable in exchange for stock of Plaintiff.  In return for

13  IRONRIDGE's satisfaction of certain bona fide debts of Plaintiff, in the

14  approximate amount of $700,000, Plaintiff would receive stock in Plaintiff, the

15  amount of stock being set by a contractual formula.  IRONRIDGE further

16  represented that under the IRONRIDGE arrangement the stock need not be

17  registered before it could be delivered to IRONRIDGE.  In essence, this was a

18  means by which Plaintiff could legally receive value in exchange for stock which

19  had never been registered.  Subsequent telephone calls occurred on September 4,

20  2013 and October 2, 2013 between Schneiderman, KIRKLAND and O'NEILL in

21  which the details of the arrangement were further explained.

22      12.   It was a part of the scheme to defraud and manipulate that in the

23  above-described  telephone conversations with Plaintiff, IRONRIDGE (through

24  KIRKLAND and O'NEILL), requested, expressly and solely for its own protection

25  against downward falls in the price of Plaintiff's stock caused by exogenous market

26  forces, an adjustment mechanism.  This mechanism provided that, in case of a fall

27  in the price of Plaintiff's stock over a defined calculation period, IRONRIDGE

28  would receive more stock than the amount that would be required at the time of the

1   inception of the exchange, and Plaintiff agreed to a potential "final adjustment" on

2   that basis.  IRONRIDGE, KIRKLAND and O'NEILL did not disclose to Plaintiff

3   their intent to reduce the price of Plaintiff's stock through their own market

4   manipulation to increase the number of shares at Plaintiff's expense.  In so doing,

5   IRONRIDGE acted knowingly, willfully and with intent to deceive Plaintiff.

6          13.    It was a part of the scheme to defraud and manipulate that a term sheet

7   proposing a transaction of the general nature described above was provided to

8   Plaintiff by IRONRIDGE, on or about September 27, 2013, a true copy of which is

9   attached as Exhibit 1 hereto (the "Term Sheet").

10         14.    It was a part of the scheme to defraud and manipulate that

11  IRONRIDGE, which had previously and subsequently used its own name in emails

12  and on the Term Sheet, used the name of a purported separate entity, a limited

13  partnership called IRONRIDGE GLOBAL IV, LTD, and its supposed division,

14  Ironridge BioPharma Co.  Notably, IRONRIDGE's Court filings do not recite any

15  state of incorporation or address for the supposed limited partnership.  This limited

16  partnership was a mere instrumentality of IRONRIDGE, used in an attempt to

17  insulate IRONRIDGE and its officers and agents from responsibility for its

18  fraudulent and manipulative conduct and wrongdoing.  If such a limited partnership

19  entity as IRONRIDGE GLOBAL IV, LTD. exists at all, the entity veil should be

20  pierced and IRONRIDGE held responsible for the actions and wrongdoing of its

21  agents and instrumentality entities.

22         15.    It was a part of the scheme to defraud and manipulate that, in

23  discussions leading up to the drafting and entry into a binding agreement, agents of

24  IRONRIDGE, specifically KIRKLAND (Chief Operating Officer and principal of

25  IRONRIDGE) and O'NEILL, had further conversations with Mr. Scheiderman of

26  Plaintiff.  One particularly important telephone call between the three occurred on

27  October 4, 2013.  In that telephone call, KIRKLAND and O'NEILL addressed the

28  potential  effects that the sale of stock delivered to IRONRIDGE could have on the

1    price of Plaintiff's stock by making the representation to Plaintiff that

2    IRONRIDGE, unlike others who had funded Plaintiff in return for stock, would

3    take no action to manipulate or effect Plaintiff's stock price, and that any sales that

4    might be necessary to fund the satisfaction of Plaintiff's receivables would be made

5    in such a way that they would never be more than ten percent of the volume of sales

6    on any given day.  These representations were knowingly and willfully false, and

7    made with intent to deceive Plaintiff.

8         16.    It was a part of the scheme to defraud and manipulate that

9    IRONRIDGE, through its deceptive representations and fraudulent omissions,

10   obtained the agreement of Plaintiff to enter into such an arrangement, and that

11   thereafter, on November 8, 2013, a stipulation and proposed order (approving the

12   stipulation) were presented to a state court judge in California.  The order was

13   signed by the judge after reviewing the papers briefly in chambers.  The

14   stipulation/order provided for the immediate issuance and delivery of 8,690,000

15   shares of common stock in Plaintiff to IRONRIDGE.  A true copy of the California

16   court order, and underlying stipulation, approving the issuance of the stock to

17   IRONRIDGE is attached hereto as Exhibit 2.  (Exhibit 2 is referred to hereafter as

18   the "Stipulation.")  Upon receipt of the court approval order, Plaintiff delivered the

19   stated number of shares to IRONRIDGE.

20        17.    IRONRIDGE's scheme to defraud and manipulate included a "bait and

21   switch."  While the Term Sheet contemplated only one potential "Final

22   Adjustment" that might provide additional shares to IRONRIDGE, the Stipulation

23   included language (at paragraphs 7, 8 and 10) which IRONRIDGE would later

24   contend allowed IRONRIDGE multiple  opportunities to seek additional shares of

25   Plaintiff's stock.

26        18.    It was a part of the scheme to defraud and manipulate that, contrary to

27   its repeated commitments to Plaintiff, IRONRIDGE entered into a scheme of

28   selling Plaintiff's stock with the intent of artificially lowering the price of the

6

security, and not for any legitimate economic reason.

19.   It was a part of the scheme to defraud and manipulate that IRONRIDGE repeatedly sold Plaintiff's stock in a volume exceeding ten percent of all sales on many days.  A chart of the volume of sales by IRONRIDGE, as a percentage of all sales, is attached as Exhibit 3.  As one example among many, during the week of January 6, 2014, sales by IRONRIDGE represented 28.4% of total sales; during the week of January 21, 22.6%; throughout February 2014, from 30 to 50%; and a high of 57% during the week of April 7, 2014.

20.   It was a part of the scheme to defraud and manipulate that IRONRIDGE made these sales with the intent and purpose of manipulating the market to reduce the price of Plaintiff's stock for the purpose of increasing the number of shares received by Defendant under its agreement with Plaintiff.   The sales by IRONRIDGE themselves had the tendency and effect of reducing prices of Plaintiff's stock.

21.   It was a part of the scheme to defraud and manipulate that IRONRIDGE further knew and deliberately intended that its sales would send false information as to supply and demand into the market, thus inducing other sales by the general public at reduced prices, creating a further market distortion as to the price for Plaintiff's shares, and ultimately further increasing the number of shares of Plaintiff's stock that would be received by IRONRIDGE.   IRONRIDGE was guilty of manipulative conduct, *i.e.*, knowing and willful conduct designed to deceive or defraud investors by artificially affecting the price of a publicly-traded security.

22.   It was a further part of the scheme to defraud and manipulate that, when Plaintiff questioned employees of IRONRIDGE about its sales of Plaintiff's stock, based on the negative trend of stock value, IRONRIDGE refused to answer the questions, stating that the subject was confidential.

23.   It was a further part of the scheme to defraud and manipulate that IRONRIDGE successfully reduced the market price of Plaintiff, which had been in

7

1   the range of 15 cents ($.15) on day of delivery of stock, to the range of ten cents

2   ($.10) and below in April 2014.   There was no economic basis for this reduction,

3   which was purely generated by the sales of Plaintiff's stock by IRONRIDGE.

4   Indeed, absent illegal manipulation, Plaintiff's stock price should have risen, given

5   myriad positive business developments for Plaintiff.

6        24.    It was a further part of the scheme to defraud and manipulate that

7   IRONRIDGE hoped and intended to increase the number of shares of Plaintiff's

8   stock it obtained, through manipulation of the price of Plaintiff's stock, and then

9   profit when the stock rose back to its

10   natural level, as justified by the economic reality of the company's performance.

11        25.    It was a further part of the scheme to defraud and manipulate that

12   IRONRIDGE intended by its manipulative actions to seek not the 8.7 million shares

13   of Plantiff's stock it had spoken of to Plaintiff, but more than 12 million shares.

14   IRONRIDGE, by invoking the so-called "adjustment" mechanism, has already

15   received 10.3 million of these shares, and is seeking a further 1.6 million shares

16   through the California courts, and has indicated that it will seek even more in the

17   future.

18        26.    It was a part of the scheme to defraud and manipulate that

19   IRONRIDGE sold far more of Plaintiff's stock than was necessary to fund the

20   payment of Plaintiff's receivables.  IRONRIDGE's sales of 10,305,550 shares of

21   Plaintiff's stock led to proceeds of at least $1.2 million.

22        27.    It was a further part of the scheme to defraud that IRONRIDGE has

23   attempted to profit by its wrongs, its disregard of its commitments to Plaintiff, and

24   its bad faith actions.

25        28.    The Plaintiff has given IRONRIDGE stock worth at least $1.4 million

26   in exchange for satisfaction of less than $770,000 of debt.

27        29.    Plaintiff has been further damaged by, among other things, the loss of

28   at least 1.6 million shares of its stock, with the final number remaining

8

COMPLAINT

1  undetermined.

2      30.    Plaintiff's conduct with respect to Defendant is part of a wider pattern

3  of illegal and deceptive activity.  Indeed, Plaintiff has engaged in essentially the

4  same or similar wrongful conduct in connection with the stock of many other

5  companies.  The watchdog website "Scam Informer" recently observed that "[t]he

6  destruction in stocks [IRONRIDGE] has completed transactions with makes the

7  devastation from Hurricane Irene seem tame by comparison."

8      31.    Among the companies that have been victims of IRONRIDGE's

9  schemes is Green Automotive Company, Inc., which is the subject of a similar

10  stipulation/order in a California state court action, under the Section 3(a)(10)

11  exemption.  Incredibly,  IRONRIDGE actually seeks 6 *billion* shares in Green

12  Automotive, which is six times the company's total capitalization.  That is a vivid

13  illustration of the absurdly deceptive, abusive and bad faith manner in which

14  IRONRIDGE has been obtaining and implementing the type of stipulation/order at

15  issue here.

16

17          **FIRST CAUSE OF ACTION (10b-5 VIOLATIONS)**

18      32.    Plaintiff incorporates, by reference, the allegations of paragraphs 1

19  through 31 of this Complaint.

20      33.    The conduct of Defendants IRONRIDGE, KIRKLAND and O'NEILL

21  violates SEC Rule 10b-5 (promulgated under the Securities Exchange Act of 1934).

22      34.  Defendants individually and in concert used directly and indirectly the

23  means and instrumentalities of interest commerce, the mails and/or interstate wires

24  in connection with their scheme to defraud and manipulate as set forth above.

25      35.  The Defendants each employed devices, schemes and artifices to defraud

26  and to manipulate Plaintiff's stock price, made untrue statements of material fact,

27  and omitted to state material facts necessary to make their statements not

28  misleading, and engaged in acts, practices and a course of business that operated as

9

1    a fraud and deceit upon the Plaintiff.

2         36.    Each of the Defendants was a primary participant in the wrongful and

3    illegal conduct.

4         37.    Each of the defendants acted with intent to deceive, manipulate and

5    defraud the Plaintiff.  Defendants acted with actual knowledge, or at a minimum

6    severe recklessness, that the omissions and statements referenced herein were false

7    and misleading, and that the failure to disclose material facts and make accurate

8    representations as to their actual and intended plans and trading induced Plaintiff to

9    do business with IRONRIDGE and to issue stock to IRONRIDGE.

10        38.    KIRKLAND and O'NEILL are also persons in control of Defendant

11   IRONRIDGE under Section 20(a) of the Securities and Exchange Act.  Each has

12   been a high level Managing Director and executive of Defendant IRONRIDGE at

13   all relevant times.  Indeed, they represent two of the three total Managing Directors

14   identified on the IRONRIDGE web site.  Further, each was well aware of and

15   participated intimately in the misrepresentations and wrongful omissions made to

16   Plaintiff in the course of negotiations, and each has participated in and ratified the

17   manipulation of the Plaintiff's stock as alleged herein.

18        39.    At the time of the misrepresentations and omissions alleged herein,

19   Plaintiff believed all statements and assurances made by Defendants were true and

20   was unaware of any of the omitted facts, such as the Defendants' intent to

21   manipulate Plaintiff's stock as alleged herein.  Had Plaintiff known the true facts,

22   Plaintiff would never have entered into the Section 3(a)(10) arrangement with

23   Defendant IRONRIDGE.

24        40.    As a direct and proximate result of the wrongful conduct of the

25   Defendants, Plaintiff suffered damages and is consequently entitled to all relief

26   available under the Securities Exchange Act, including compensatory damages

27   against each of the Defendants IRONRIDGE, KIRKLAND and O'NEILL, jointly

28   and severally, for all damages suffered as a result of the Defendants' wrongdoing,

10

COMPLAINT

1   in an amount to be proven at trial, with interest thereon; the costs and expenses of

2   this action; and other relief which the Court may find just, appropriate or legally

3   warranted.

4

5   ## SECOND CAUSE OF ACTION (BREACH OF CONTRACT)

6

7       41.   Plaintiff incorporates, by reference, the allegations of paragraphs 1

8   through 40 of this Complaint.

9       42.   IRONRIDGE's conduct is a breach of the terms of the agreement

10   between SCRIPS and IRONRIDGE, which was premised on the understanding that

11   IRONRIDGE would not engage in conduct designed to depress artificially the price

12   of SCRIPS' stock, as reflected in paragraph 14 of the Stipulation (Exhibit 2) and

13   the "No Shorting" provision on page 2 of the Term Sheet (Exhibit 1).

14   IRONRIDGE's breach has adversely affected SCRIPS' share value and has caused

15   SCRIPS to issue excessive amounts of stock to IRONRIDGE under the

16   STIPULATION.

17

18   ## THIRD CAUSE OF ACTION (TORTIOUS BAD FAITH)

19

20       43.   Plaintiff incorporates, by reference, the allegations of paragraphs 1

21   through 42 of this Complaint.

22       44.   IRONRIDGE's conduct is a tortious breach of the covenant of good

23   faith and fair dealing implied in every contract in California.  IRONRIDGE

24   engaged in manipulative trading activity designed to depress artificially the value of

25   SCRIPS' stock and thereby yield grossly unfair levels of share issuances under the

26   Stipulation.  This conduct was in violation of past representations that

27   IRONRIDGE would not engage in such activity, and was at odds with the

28   understanding, reflected in the Term Sheet and the Stipulation, that IRONRIDGE

would not engage in trading activity designed to depress stock price.  This conduct was part of a malicious, oppressive, and fraudulent scheme to game the Stipulation in such a way as to inflict financial harm on SCRIPS to such a degree as to undermine and frustrate the essential purpose of the Stipulation (from SCRIPS' perspective), in order to produce grossly excessive and unconscionable levels of profit for IRONRIDGE.

## FOURTH CAUSE OF ACTION (DECLARATORY RELIEF)

45.   Plaintiff incorporates, by reference, the allegations of paragraphs 1 through 44 of this Complaint.

46.   IRONRIDGE continues to make demand under the Stipulation for issuance of additional shares to it.  SCRIPS has refused the latest such demand.  SCRIPS requests that the Court declare that it has no obligation to meet such demands because SCRIPS is excused from performing under the Stipulation due to IRONRIDGE's illegal conduct, breach of the Stipulation, and tortious bad faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.   That the Court award compensatory damages according to proof;

2.   That the Court award attorney's fees;

3.   That the Court award costs of suit;

4.   That the Court award punitive damages on account of IRONRIDGE's tortious bad faith, which either constitutes fraud or was accompanied by malice, oppression or fraud;

12

COMPLAINT

5.     That the Court declare the rights and obligations of the parties as requested in Cause of Action No. 4; and

6.     That the Court award such other and further relief as the Court deems just and proper.

Dated:  May 22, 2014

By:   _____
      Carlos E. Needham
      *Attorney for Plaintiff*
      SCRIPSAMERICA, INC.

13

COMPLAINT

# IRONRIDGE &copy;

## *Term Sheet for Satisfaction of $750 Thousand in Creditor Liabilities*

**Company:** Scripsamerica Inc. ("Company").

**Purchaser:** Ironridge BioPharma Co., a division of Ironridge Global IV, Ltd. ("Purchaser").

**Purchase Amount:** Approximately $750,000.00 of bona fide liabilities ("Liabilities") owed to existing creditors ("Creditors") of Company.

**Purchase of Liabilities:** Purchaser will enter into agreements with Creditors to purchase the Liabilities, that will include installment payments mutually agreeable to Purchaser and Creditors.

**Satisfaction of Liabilities:** Company and Purchaser will satisfy the Liabilities by Company issuing to Purchaser unregistered shares of Common Stock of Company ("Shares").

**Approval:** After execution of agreements with the Creditors, Purchaser will seek approval of the fairness of the terms and conditions for satisfaction of the Liabilities in exchange for the issuance of the Shares ("Approval"), by any court, official or agency of the United States authorized by law to grant such approval.

**Calculation Period:** The number of consecutive trading days, following the date on which Shares are received into Purchaser's account, necessary for aggregate dollar volume equal to ten times the amount of Liabilities to trade on the market ("Calculation Period").

**Share Price:** 80% of the following: the closing price on the trading day immediately preceding the Approval date, not to exceed the arithmetic average of the individual daily VWAPs for any five trading days within the Calculation Period less trading costs of $0.01 per share, ("Share Price").

**Initial Share Issuance:** Upon Approval, Company will issue and deliver, in electronic form via deposit/withdrawal at custodian (DWAC), Shares in an amount equal to 9.99% of the total issued and outstanding Common Stock, together with an irrevocable transfer agent instruction and opinion of Company's counsel, in form acceptable to Purchaser.

1

EXHIBIT 1
14

| | |
|---|---|
| **Final Adjustment:** | If during the Calculation Period the number of Shares issued reasonably appears to be insufficient to satisfy the Liabilities, Company shall issue additional Shares (subject to the Limitation on Ownership below). Any additional Shares that are issued shall be included in the Final Adjustment. At the end of the Calculation Period, Purchaser will return to the Company for cancellation, or Company will issue to Purchaser, that number of Shares as necessary such that the total number of Shares issued to Purchaser for the satisfaction of Liabilities is equal to the Liabilities divided by the Share Price ("Final Adjustment"). |
| **Registration Statement:** | None. |
| **Registration Rights:** | None. |
| **Warrants:** | None. |
| **No Shorting:** | Purchaser (a) has never shorted Company's stock, (b) does not currently hold any short position, and (c) will not engage in or effect, directly or indirectly, any short sale before, during or within 180 days after the Calculation Period. |
| **Limitations on Beneficial Ownership:** | Company will not under any circumstances issue Shares to Purchaser if as a result of such issuance Purchaser would beneficially own, at any one time, more than 9.99% of the shares of Common Stock then outstanding. |
| **Due Diligence:** | Company will reasonably cooperate with Purchaser in confirming the validity, nature and amount of the Liabilities of each of the Creditors. |
| **Exclusivity:** | Until the later of 90 days from execution of this term sheet or 180 days from the Final Adjustment, (i) Company shall not enter into any exchange transaction under Section 3(a) of the Securities Act, (ii) Company and its representatives shall not directly or indirectly discuss, negotiate or consider any proposal or offer from any other person or entity relating to any liabilities, or any transaction having an effect or result similar to the transactions contemplated hereby. |
| **Confidentiality:** | Company and its employees, advisors and representatives shall (a) keep strictly confidential, (b) not use for any purpose other than negotiating with Purchaser, and (c) not disclose to any person or entity: (i) this term sheet and all provisions hereof, (ii) all discussions and communications between the parties, and (iii) all strategies, methods and documentation of Purchaser and its affiliates related to any possible transaction. |

EXHIBIT 1
15

ORIGINAL FILED

NOV X 8 2013

LOS ANGELES
SUPERIOR COURT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

CENTRAL DISTRICT

| | |
|---|---|
| IRONRIDGE GLOBAL IV, LTD., | Case No.: BC524230 |
|     Plaintiff, | Assigned for All Purposes to: Hon. Rolf M. Treu |
| v. | [PROPOSED] ORDER FOR APPROVAL OF STIPULATION FOR SETTLEMENT OF CLAIMS |
| SCRIPSAMERICA, INC., | |
|     Defendant. | Date:   November 08, 2013<br>Time:  8:30 a.m.<br>Dept:  58<br>Trial Date: None |

The Joint *Ex Parte* Application for Court Approval of Stipulated Settlement ("Application"), filed by Plaintiff Ironridge Global IV, Ltd. ("Plaintiff") and ScripsAmerica, Inc., ("Defendant"), came on for hearing on November 08, 2013 at 8:30 am in Department 58 of the above-entitled court, the Honorable Rolf M. Treu., Judge presiding.

The Court having considered the Application and supporting papers, the oral arguments of counsel, having been presented with a Stipulation for Settlement of Claims ("Stipulation"), and good cause appearing therefor,

1

[PROPOSED] ORDER FOR APPROVAL OF STIPULATION FOR SETTLEMENT OF CLAIMS

*EXHIBIT 2*
*16*

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.       The Stipulation, attached hereto as <u>Exhibit A</u> and incorporated herein by reference, is approved in its entirety;

2.       Plaintiff owns bona fide outstanding claims against Defendant, and the terms and conditions of the issuance and exchange of such claims for free-trading shares of common stock of Defendant, as set forth in the Stipulation, are approved after a hearing upon the fairness of such terms and conditions at which Plaintiff, the only person to whom it is proposed to issue securities in such exchange, had the right to appear;

3.       The above-entitled action is dismissed ~~in its entirety~~ WITHOUT PREJUDICE; provided that the Court shall retain jurisdiction to enforce the terms of this Order by a motion under California Code of Civil Procedure Section 664.6.

**IT IS SO ORDERED.**

DATED: November 8, 2013

ROLF M. TREU

_____

Judge of the Superior Court

2

EXHIBIT 2
17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**
**STIPULATION FOR SETTLEMENT OF CLAIMS**

EXHIBIT 2
18

1   INCITE LAW GROUP, INC.
2   Mark A. Vega (SBN 162621)
    mark@incitelawgroup.com
3   Mona Mahdara Alcalá (SBN 270384)
    mona@incitelawgroup.com
4   6427 West Sunset Boulevard
    Hollywood, CA 90028
5   P (323) 306-3870; F (323) 306-3874

6
    Attorneys for Plaintiff
7   IRONRIDGE GLOBAL IV, LTD.

8   The Law Office of Carlos E. Needham
    Carlos E. Needham (SBN 202777)
9   cneedham@needhamlegal.com
10  28494 Westinghouse Place, Suite 213
    Valencia, CA 91355
11  P (661) 843-6175; F (661) 430-5595

12  Attorney for Defendant
    SCRIPSAMERICA, INC.
13

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA

15               FOR THE COUNTY OF LOS ANGELES

16                      CENTRAL DISTRICT

17  IRONRIDGE GLOBAL IV, LTD.,          Case No: BC524230

18          Plaintiff,                  Assigned for All Purposes to:
                                        Hon. Rolf M. Treu
19  v.
                                        **STIPULATION FOR SETTLEMENT OF**
20  SCRIPSAMERICA, INC.,                **CLAIMS**

21          Defendant.                  Date:    November 08, 2013
                                        Time:    8:30 am
22                                      Dept:    58

23                                      Trial Date:  None Set

24

25       Plaintiff Ironridge Global IV, Ltd. ("Plaintiff") and defendant ScripAmerica, Inc.

26  ("Defendant"), hereby stipulate to the facts, terms, and conditions contained in the [Proposed]

27

28
    _____
            STIPULATION FOR SETTLEMENT OF CLAIMS
                            1

                    EXHIBIT 2
                       19

1   Order Approving Stipulation for Settlement of Claims ("Order") submitted herewith and
2   incorporated herein by this reference, and further stipulate and agree as follows:
3          1.     Plaintiff and Defendant request that this Court enter an order substantially in the
4   form of the concurrently filed proposed Order.
5          2.     Plaintiff owns bona fide claims ("Claims") against Defendant in the aggregate
6   amount of $686,962.08 ("Claim Amount"), plus interest and attorneys' fees.  Defendant has not
7   paid the amount due on the Claims.  Plaintiff filed the above-captioned collection action, which
8   the parties now seek to settle by this Stipulation and the proposed Order.
9          3.     Defendant is a public company, and desires to settle the Claims in exchange for the
10  issuance to Plaintiff of unrestricted and freely tradable exempted shares of Defendant's common
11  stock ("Common Stock").  Plaintiff desires to accept such shares in accordance with the terms of
12  this Stipulation, subject to court approval following a hearing as envisioned by Section
13  25017(f)(3) of the California Corporations Code, and Section 3(a)(10) of the federal Securities Act
14  of 1933, as amended ("Securities Act").
15         4.     Plaintiff has agreed to the proposed settlement terms and conditions, and believes
16  that they are sufficiently fair such that Plaintiff is willing to enter into this Stipulation.
17  Defendant's board of directors has considered the proposed transaction and has resolved that its
18  terms and conditions are fair to, and in the best interests of, Defendant and its stockholders.
19  Accordingly, both parties request Court approval of the settlement provided for herein as fair, just
20  and reasonable.   The parties submit this Stipulation to the Court on ex parte application, and
21  request that the Court enter an Order approving this Stipulation following the hearing hereon.
22         5.     It is the intent and effect of this Stipulation that the Order, when signed, shall end,
23  finally and forever any claim to payment or compensation that Plaintiff has against Defendant for
24  the Claims.  Subject to entry of and compliance with the Order, each party hereby releases and
25  forever discharges the other party and its officers, directors, shareholders, members, managers,
26  representatives, advisors, agents and attorneys, from any and all claims, liabilities, obligations and
27  causes of action, known and unknown, arising out of or related to the Claims.  Each party waives
28

1  all rights conferred by California Civil Code Section 1542 and any similar law. Section 1542

2  provides as follows: "§1542 General Release—Claim Extinguished. A general release does not

3  extend to Claims which the creditor does not know or suspect to exist in his or her favor at the

4  time of executing the release, which if known by him or her must have materially affected his or

5  her settlement with the debtor."

6      6.    In full and final settlement of the Claims, Defendant will issue and deliver to

7  Plaintiff the sum of 8,690,000 shares of Common Stock ("Initial Issuance"), subject to the

8  subsequent adjustments, issuances, returns, and ownership limitations set forth in this Stipulation.

9  No later than the trading day after entry of the Order or any request by Plaintiff, time being of the

10 essence, Defendant shall take and cause to be taken all action necessary to complete the

11 transactions contemplated hereby, including, but not limited to:  (a) deliver to Defendant's transfer

12 agent (i) a copy of the Order, (ii) an irrevocable and unconditional instruction, in form and

13 substance acceptable to Plaintiff and the transfer agent, to reserve for and issue to Plaintiff all

14 shares of Common Stock required by the Order, and (iii) opinions of Defendant's counsel, in form

15 and substance acceptable to Plaintiff and the transfer agent, that all shares of Common Stock to be

16 issued pursuant to the Order (A) are legally issued, fully paid and non-assessable, (B) when issued

17 in accordance with the Order will be unrestricted, freely tradable and exempted from the

18 registration requirements under the Securities Act, and (C) may be issued without restrictive

19 legend and immediately resold by Plaintiff without restriction; (b) issue the Initial Issuance, as a

20 certificate bearing no restrictive legend, and immediately facilitate conversion into Direct

21 Registration System (DRS) shares to Plaintiff's balance account with The Depository Trust

22 Company (DTC) or the Deposit/Withdrawal Agent Commission (DWAC) system, without any

23 restriction on transfer or resale; and (c) execution and deliver all further instruments and

24 documents as may be reasonably requested by Plaintiff. The issuance of a certificate alone shall

25 not constitute completion of the Initial Issuance. The trading day after the Initial Issuance is

26 complete and all shares have been received into Plaintiff's account in electronic form and fully

27 cleared for trading shall be referred to as the "Issuance Date."

28

EXHIBIT 2
21

7.      The period from the date of this Stipulation until that number of consecutive trading days following the Issuance Date required for the aggregate trading volume of the Common Stock between 9:30:00 a.m. and 4:00:00 pm Eastern, i.e. excluding after hours trades, to exceed $7 million shall be referred to as the "Calculation Period".  The final number of shares of Common Stock to which Plaintiff will be entitled under the Order ("Final Amount") will be that number of shares with an aggregate value equal to (a) the sum of the Claim Amount, 10% third party agent fees, plus reasonable attorney fees and expenses, (b) divided by 80% of the following: the closing price of the Common Stock on the trading day immediately preceding the date of entry of the Order, not to exceed the arithmetic average of the individual volume weighted average prices of any five trading days during the Calculation Period, less $0.01 per share; all as reported by the Bloomberg Professional service of Bloomberg LP ("Bloomberg").

8.      If at any time during the Calculation Period the shares issued to Plaintiff are less than any reasonably possible Final Amount or a closing price is below 80% of the closing price on the trading day before entry of the Order, Plaintiff may request that Defendant reserve and/or issue additional shares of Common Stock (each, an "Additional Issuance") within one trading day, time being of the essence, and Defendant's transfer agents, attorneys, officers and directors, including without limitation Robert Schneiderman and Jeffrey J. Andrews, shall immediately take all actions necessary to do so.  For each day after Plaintiff requests issuance that shares are not, for any reason, received into Plaintiff's account in electronic form and fully cleared for trading, the trading volume during such time shall not count toward aggregate trading volume and the Calculation Period shall be extended by one trading day.

9.      Under no circumstances shall Defendant issue to Plaintiff at any one time a number of shares which, when aggregated with all shares of Common Stock then beneficially owned or controlled by Plaintiff or its affiliates, at such time exceed 9.99% of the total number of shares of Common Stock outstanding after such issuance.

10.     At the end of the Calculation Period, (a) if the sum of the Initial Issuance and any Additional Issuances is less than the Final Amount, Defendant shall issue additional shares of

EXHIBIT 2
22

1  Common Stock to Plaintiff as soon as possible, up to the Final Amount, and (b) if the sum of the

2  Initial Issuance and any Additional Issuance is greater than the Final Amount, Plaintiff shall

3  promptly return any remaining shares to Defendant or its transfer agent for cancellation, ("Final

4  Adjustment").

5       11.    Defendant represents, warrants and covenants as follows:  (a) there are 150,000,000

6  authorized shares of Common Stock of Defendant, of which 78,238,653 are issued and

7  outstanding, and 34,265,051 authorized, unissued and unreserved shares available for reservation

8  and issuance to Plaintiff; (b) the shares of Common Stock to be issued pursuant to the Order are (i)

9  duly authorized, and will be validly and legally issued, fully paid and non-assessable, free and

10  clear of all liens, encumbrances and preemptive and similar rights, (ii) unrestricted, freely tradable

11  and exempted from registration under the Securities Act, (iii) issuable without any restrictive

12  legend, and (iv) may be immediately resold by Plaintiff without restriction; (c) Defendant has

13  reserved and will continue to reserve all shares of Common Stock that could be issued to Plaintiff

14  pursuant to the terms of the Order, and if at any time it appears reasonably possible that there may

15  be insufficient authorized or reserved shares to fully comply with the Order, Defendant shall take

16  all action required to immediately reserve thrice the number of shares that could be issued

17  pursuant to the terms of the Order based on the lowest closing price within the Calculation Period,

18  including without limitation increasing its authorized shares so as to ensure its ability to timely

19  comply with the Order, and Defendant will not reserve, issue or transfer any shares of Common

20  Stock to any other person unless and until sufficient shares have been irrevocably reserved for

21  Plaintiff; (d) Defendant has all necessary power and authority to execute, deliver and perform all

22  of its obligations under this Stipulation and the Order, the execution, delivery and performance of

23  which have been duly authorized by all requisite action on the part of Defendant, including

24  without limitation approval by its board of directors; (e) this Stipulation has been duly executed

25  and delivered by Defendant, and is fully enforceable against Defendant in accordance with its

26  terms, and the Stipulation and Order will not (i) conflict with, violate, or cause a breach or default

27  under any agreement to which Defendant is a party, or (ii) require any waiver, consent, or other

28

STIPULATION FOR SETTLEMENT OF CLAIMS

5

EXHIBIT 2

23

1   action of Defendant or any other person; (f) Defendant waives, without limitation, any agreement

2   related to the Claims requiring payments to be applied in a certain time, order, manner, or fashion,

3   or providing for jurisdiction or venue in any court other than this Court; (g) neither Plaintiff nor

4   any of the creditors from whom Plaintiff acquired the Claims, nor any of their affiliates, (i) is or

5   was an officer, director, 10% shareholder, control person, or affiliate of Defendant within the last

6   90 days, or (ii) has or will, directly or indirectly, receive or provide any consideration in exchange

7   for selling or satisfying the Claims, other than pursuant to this Stipulation; (h) Defendant

8   understands that the issuance of shares as required by the Order may have a dilutive effect, which

9   may be substantial; (i) neither Defendant nor any of Defendant's affiliates or agents has or will

10  provide Plaintiff with any material non-public information regarding Defendant or its securities;

11  (j) Plaintiff has no obligation of confidentiality, and may sell any of its shares of Defendant's

12  common stock issued pursuant to the Order at any time, including without limitation throughout

13  the Calculation Period; and (k) with respect to this Stipulation and the transactions contemplated

14  hereby (i) Plaintiff is acting solely in an arm's length capacity, (ii) Plaintiff does not make or has

15  not made any representations or warranties other than those specifically set forth herein, (iii)

16  Defendant's obligations under the Order are unconditional and absolute and not subject to any

17  right of set off, counterclaim, delay or reduction, regardless of any claim Defendant may have

18  against Plaintiff, (iv) Plaintiff has not and is not acting as a legal, financial, accounting or tax

19  advisor to Defendant, or agent or fiduciary of Defendant, or in any similar capacity, and (v) any

20  statement made by Plaintiff or any of Plaintiff's representatives, agents or attorneys is not advice

21  or a recommendation to Defendant.

22          12.     For so long as Plaintiff or any of its affiliates holds any shares of Common Stock,

23  neither Plaintiff nor any of its affiliates shall:  (a) vote any shares of Common Stock owned or

24  controlled by it, exercise any dissenter's rights, execute or solicit any proxies or seek to advise or

25  influence any person with respect to any voting securities of Defendant; or (b) engage or

26  participate in any actions, plans or proposals that relate to or would result in (i) Plaintiff or any of

27  its affiliates acquiring additional securities of Defendant, alone or together with any other person,

28

STIPULATION FOR SETTLEMENT OF CLAIMS
6

EXHIBIT 2
24

1    which would result in Plaintiff and its affiliates collectively beneficially owning or controlling, or

2    being deemed to beneficially own or control, more than 9.99% of the total outstanding Common

3    Stock or other voting securities of Defendant at any one time, (ii) an extraordinary corporate

4    transaction, such as a merger, reorganization or liquidation, involving Defendant or any of its

5    subsidiaries, (iii) a sale or transfer of a material amount of assets of Defendant or any of its

6    subsidiaries, (iv) any change in the present board of directors or management of Defendant,

7    including any plans or proposals to change the number or term of directors or to fill any existing

8    vacancies on the board, (v) any material change in the present capitalization or dividend policy of

9    Defendant, (vi) any other material change in Defendant's business or corporate structure, (vii)

10   changes in Defendant's charter, bylaws or instruments corresponding thereto or other actions

11   which may impede the acquisition of control of Defendant by any person, (viii) causing a class of

12   securities of Defendant to be delisted from a national securities exchange or to cease to be

13   authorized to be quoted in an inter-dealer quotation system of a registered national securities

14   association, (ix) causing a class of equity securities of Defendant to become eligible for

15   termination of registration pursuant to Section 12(g)(4) of the Securities Exchange Act of 1934, as

16   amended, or (x) taking any action, intention, plan or arrangement similar to any of those

17   enumerated above.  The provisions of this paragraph may not be modified or waived without

18   further order of the Court.

19       13.    Until at least one half of the total trading volume for the Calculation Period has

20   traded, Defendant shall not, directly or indirectly, (a) effect any split, reverse split or combination

21   of its Common Stock, (b) issue any securities pursuant to a Form S-8 registration statement, (c)

22   agree to, sell or issue any free trading Common Stock, or convertible or exchangeable note or

23   other security, (i) at an original issue discount, or (ii) subject or pursuant to any agreement, term or

24   provision, including without limitation any fee, discount, conversion, exchange, exercise or other

25   price, that is based upon, may vary, or is subject to being changed or reset due to any aspect of the

26   market for the Common Stock, including without limitation trading price.

27

28

---

STIPULATION FOR SETTLEMENT OF CLAIMS

7

EXHIBIT 2

25

14. Until at least 180 days after the end of the Calculation Period, (a) neither Plaintiff nor any of its affiliates shall (i) hold any short position in the Common Stock, or (ii) engage in or effect, directly or indirectly, any short sale of the Common Stock; and (b) Defendant shall not, directly or indirectly, (i) enter into, effect, alter or amend any exchange or transaction under, pursuant to or in reliance upon any part of Section 3(a) of the Securities Act.

15. Defendant shall indemnify, defend and hold Plaintiff and its affiliates harmless with respect to all claims, actions and proceedings arising out or related to this Stipulation or the Order, including without limitation, any claim or action brought derivatively or by any one or more shareholders or creditors of Defendant.

16. The parties to this Stipulation represent that each of them has been advised as to the terms and legal effect of this Stipulation and the Order provided for herein, and that the settlement and compromise stated herein is final and conclusive forthwith, subject to the conditions stated herein, and each attorney represents that his or her client has freely consented to and authorized this Stipulation after having been so advised.

17. This Stipulation constitutes Defendant's answer to the Complaint in this Action. Each party hereto waives a statement of decision, all rights to appeal, and all defenses to the Order and its enforcement, including without limitation any based on jurisdiction, standing, or splitting causes of action. There shall be no third party beneficiaries with respect to this Stipulation or the Order. The prevailing party in any proceeding required to enforce this Stipulation, the Order, or any judgment or order issued thereon, shall be awarded reasonable attorney fees, costs and expenses arising out of or relating thereto. Except as expressly set forth herein, each party shall bear its own attorneys' fees, costs and expenses. This Stipulation may be executed in counterparts and transmitted by facsimile, in portable document format (pdf), or other electronic format, each of which shall constitute an original and all of which together shall be deemed a single instrument.

//

//

1  //

2  //

3      18.    Upon entry of the Order approving this Stipulation, the Action shall be dismissed in

4  its entirety, with the Court retaining jurisdiction to enforce the terms of the Stipulation and Order

5  by ex parte application, judgment, motion or other proceeding under Section 664.6 of the

6  California Code of Civil Procedure.

7      IT IS SO STIPULATED:

8  DATED: November 7, 2013          IRONRIDGE GLOBAL IV, LTD.

9

10                                  By:_____
                                    David Sims, Director

11 DATED: November   , 2013         INCITE LAW GROUP

12

13                                  By:_____
                                    Mark A. Vega

14                                  Mona Mahdara Alcalá, Attorneys for Plaintiff

15 DATED: November   , 2013         SCRIPSAMERICA, INC.

16

17                                  By:_____
                                    Robert Schneiderman, Chief Executive Officer

18

19                                  By:_____
                                    Jeffrey J. Andrews, Chief Financial Officer

20 DATED: Novmeber   , 2013         The Law Office of Carlos E. Needham

21                                  By:_____

22                                  Carlos E. Needham, Attorneys for Defendant

23 DATED: November   , 2013         _____

24                                  Robert Schneiderman, individually as to
                                    Paragraph 8 only

25

26 DATED: November   , 2013         _____

27                                  Jeffrey J. Andrews, individually as to
                                    Paragraph 8 only

28

_____
STIPULATION FOR SETTLEMENT OF CLAIMS
9

EXHIBIT 2
27

1  //

2  //

3       18.    Upon entry of the Order approving this Stipulation, the Action shall be dismissed in

4  its entirety, with the Court retaining jurisdiction to enforce the terms of the Stipulation and Order

5  by ex parte application, judgment, motion or other proceeding under Section 664.6 of the

6  California Code of Civil Procedure.

7       IT IS SO STIPULATED:

8  DATED: November   , 2013          IRONRIDGE GLOBAL IV, LTD.

9

10                                    By:_____
                                         David Sims, Director

11 DATED: November 7, 2013            INCITE LAW GROUP

12                                    By:_____

13                                       Mark A. Vega
                                         Mona Mahdara Alcalá, Attorneys for Plaintiff
14

15 DATED: November   , 2013          SCRIPSAMERICA, INC.

16                                    By:_____
17                                       Robert Schneiderman, Chief Executive Officer

18                                    By:_____
19                                       Jeffrey J. Andrews, Chief Financial Officer

20 DATED: Novmeber   , 2013          The Law Office of Carlos E. Needham

21                                    By:_____
22                                       Carlos E. Needham, Attorneys for Defendant

23 DATED: November   , 2013

24                                    _____
                                      Robert Schneiderman, individually as to
25                                    Paragraph 8 only

26 DATED: November   , 2013          _____
                                      Jeffrey J. Andrews, individually as to
27                                    Paragraph 8 only

28

_____
                STIPULATION FOR SETTLEMENT OF CLAIMS
                                9

EXHIBIT 2
28

1  //

2  //

3     18.    Upon entry of the Order approving this Stipulation, the Action shall be dismissed in

4  its entirety, with the Court retaining jurisdiction to enforce the terms of the Stipulation and Order

5  by ex parte application, judgment, motion or other proceeding under Section 664.6 of the

6  California Code of Civil Procedure.

7     IT IS SO STIPULATED:

8  DATED: November __, 2013          IRONRIDGE GLOBAL IV, LTD.

9

10                                    By:_____
                                        David Sims, Director

11 DATED: November __, 2013          INCITE LAW GROUP

12

13                                    By:_____
                                        Mark A. Vega
14                                      Mona Mahdara Alcalá, Attorneys for Plaintiff

15 DATED: November 6, 2013           SCRIPSAMERICA, INC.

16                                    By: _____
17                                      Robert Schneiderman, Chief Executive Officer

18                                    By: _____
19                                      Jeffrey J. Andrews, Chief Financial Officer

20 DATED: November 6, 2013           The Law Office of Carlos E. Needham

21                                    By: _____
22                                      Carlos E. Needham Attorney for Defendant

23 DATED: November 6, 2013           _____
24                                    Robert Schneiderman, individually as to
                                      Paragraph 8 only
25

26 DATED: November 6, 2013           _____
                                      Jeffrey J. Andrews, individually as to
27                                    Paragraph 8 only

28

STIPULATION FOR SETTLEMENT OF CLAIMS

EXHIBIT
29

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/2/2014 | 0.1 | 0.11 | 0.1 | 0.11 | 237,400 | 0.11 | | | | |
| 5/1/2014 | 0.11 | 0.11 | 0.1 | 0.1 | 881,400 | 0.1 | | | | |
| 4/30/2014 | 0.1 | 0.11 | 0.1 | 0.1 | 385300 | 0.1 | | | | |
| 4/29/2014 | 0.1 | 0.1 | 0.09 | 0.09 | 252800 | 0.1 | | | | |
| 4/28/2014 | 0.1 | 0.11 | 0.1 | 0.1 | 231500 | 0.11 | | | | |
| | | | | | 1,988,400 | | 134,800 | | 6.78% | |
| 4/25/2014 | 0.11 | 0.11 | 0.1 | 0.11 | 23000 | 0.11 | | | | |
| 4/24/2014 | 0.11 | 0.11 | 0.1 | 0.11 | 147300 | 0.11 | | | | |
| 4/23/2014 | 0.12 | 0.12 | 0.11 | 0.11 | 409700 | 0.11 | | | | |
| 4/22/2014 | 0.11 | 0.12 | 0.11 | 0.11 | 444800 | 0.11 | | | | |
| 4/21/2014 | 0.12 | 0.12 | 0.11 | 0.11 | 35600 | 0.11 | | | | |
| | | | | | 1060400 | | 982,719 | | 92.67% | 354,169 |
| 4/17/2014 | 0.11 | 0.12 | 0.09 | 0.11 | 2241900 | 0.11 | | | | |
| 4/16/2014 | 0.09 | 0.12 | 0.08 | 0.1 | 544900 | 0.1 | | | | |
| 4/15/2014 | 0.1 | 0.11 | 0.08 | 0.1 | 847800 | 0.1 | | | | |
| 4/14/2014 | 0.1 | 0.12 | 0.09 | 0.1 | 232600 | 0.1 | | | | |
| | | | | | 3867200 | | 0 | | | |
| 4/11/2014 | 0.1 | 0.1 | 0.09 | 0.1 | 87700 | 0.1 | | | | |
| 4/10/2014 | 0.11 | 0.12 | 0.1 | 0.1 | 65800 | 0.1 | | | | |
| 4/9/2014 | 0.1 | 0.12 | 0.1 | 0.12 | 76900 | 0.12 | | | | |
| 4/8/2014 | 0.11 | 0.11 | 0.1 | 0.1 | 144300 | 0.1 | | | | |
| 4/7/2014 | 0.12 | 0.12 | 0.1 | 0.1 | 429200 | 0.1 | | | | |
| | | | | | 803900 | | 460,000 | | 57.22% | 200,000 |
| 4/4/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 98500 | 0.12 | | | | |
| 4/3/2014 | 0.12 | 0.12 | 0.1 | 0.12 | 195500 | 0.12 | | | | |
| 4/2/2014 | 0.11 | 0.12 | 0.11 | 0.12 | 830200 | 0.12 | | | | 200,000 |
| 4/1/2014 | 0.12 | 0.12 | 0.11 | 0.11 | 352100 | 0.11 | | | | 113,164 |

EXHIBIT 3

30

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|------|------|------|-----|-------|--------|-----------|------------------|---------|-----------|------------------|
| 3/31/2014 | 0.11 | 0.12 | 0.1 | 0.12 | 2052200 | 0.12 | 613,052 | | 29.87% | 217,473 |
| 3/28/2014 | 0.09 | 0.11 | 0.08 | 0.11 | 575900 | 0.11 | | | | |
| 3/27/2014 | 0.1 | 0.1 | 0.09 | 0.09 | 342800 | 0.09 | | | | |
| 3/26/2014 | 0.1 | 0.11 | 0.1 | 0.1 | 404900 | 0.1 | | | | |
| 3/25/2014 | 0.1 | 0.1 | 0.09 | 0.1 | 112100 | 0.1 | | | | |
| 3/24/2014 | 0.1 | 0.11 | 0.1 | 0.1 | 508100 | 0.1 | | | | |
| | | | | | 1488100 | | 357,327 | | 24.01% | |
| 3/21/2014 | 0.1 | 0.1 | 0.1 | 0.1 | 531900 | 0.1 | | | | |
| 3/20/2014 | 0.1 | 0.11 | 0.1 | 0.1 | 1500000 | 0.1 | | | | |
| 3/19/2014 | 0.11 | 0.12 | 0.1 | 0.1 | 307000 | 0.1 | | | | |
| 3/18/2014 | 0.11 | 0.12 | 0.1 | 0.12 | 297200 | 0.12 | | | | 300,000 |
| 3/17/2014 | 0.12 | 0.12 | 0.1 | 0.12 | 274900 | 0.12 | | | | 110,500 |
| | | | | | 2911000 | | 523,173 | | 17.97% | |
| 3/14/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 162200 | 0.12 | | | | |
| 3/13/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 619600 | 0.12 | | | | |
| 3/12/2014 | 0.1 | 0.12 | 0.1 | 0.12 | 458500 | 0.12 | | | | |
| 3/11/2014 | 0.11 | 0.11 | 0.1 | 0.1 | 805600 | 0.1 | | | | |
| 3/10/2014 | 0.11 | 0.12 | 0.1 | 0.11 | 559700 | 0.11 | | | | |
| | | | | | 2605600 | | 479,400 | | 18.40% | |
| 3/7/2014 | 0.11 | 0.11 | 0.1 | 0.11 | 293600 | 0.11 | | | | |
| 3/6/2014 | 0.11 | 0.11 | 0.1 | 0.11 | 340500 | 0.11 | | | | 250,000 |
| 3/5/2014 | 0.09 | 0.12 | 0.09 | 0.11 | 743400 | 0.11 | | | | 232,614 |
| 3/4/2014 | 0.1 | 0.11 | 0.09 | 0.09 | 1664500 | 0.09 | | | | |
| 3/3/2014 | 0.12 | 0.12 | 0.09 | 0.1 | 1597400 | 0.1 | | | | |
| | | | | | 4639400 | | 482,614 | | 10.40% | |
| 2/28/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 614200 | 0.12 | | | | 200,000 |

EXHIBIT 3

31

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/27/2014 | 0.12 | 0.12 | 0.1 | 0.12 | 116300 | 0.12 | | | | |
| 2/26/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 151400 | 0.12 | | | | |
| 2/25/2014 | 0.13 | 0.13 | 0.12 | 0.12 | 388600 | 0.12 | | | | |
| 2/24/2014 | 0.13 | 0.13 | 0.12 | 0.13 | 192800 | 0.13 | | | | |
| | | | | | 1463300 | | 785,100 | | 53.65% SPIKE | |
| 2/21/2014 | 0.13 | 0.14 | 0.12 | 0.13 | 406000 | 0.13 | | | | |
| 2/20/2014 | 0.13 | 0.14 | 0.12 | 0.13 | 557600 | 0.13 | | | | 108,000 |
| 2/19/2014 | 0.14 | 0.14 | 0.12 | 0.13 | 428300 | 0.13 | | | | 256,378 |
| 2/18/2014 | 0.13 | 0.13 | 0.12 | 0.12 | 479500 | 0.12 | | | | 220,000 |
| | | | | | 1871400 | | 614,978 | | 32.86% | |
| 2/14/2014 | 0.14 | 0.14 | 0.12 | 0.12 | 838500 | 0.12 | | | | 300,000 |
| 2/13/2014 | 0.16 | 0.16 | 0.13 | 0.14 | 581500 | 0.14 | | PAYMENT #4 | | 176,600 |
| 2/12/2014 | 0.14 | 0.16 | 0.12 | 0.16 | 480800 | 0.16 | | | | 145,801 |
| 2/11/2014 | 0.15 | 0.15 | 0.12 | 0.14 | 921700 | 0.14 | | | | 102,199 |
| 2/10/2014 | 0.14 | 0.16 | 0.14 | 0.14 | 909300 | 0.14 | 1,615,550 | | | 200,000 |
| | | | | | 3731800 | | 924,629 | | 24.78% | |
| 2/7/2014 | 0.13 | 0.13 | 0.12 | 0.13 | 584500 | 0.13 | | | | 387,485 |
| 2/6/2014 | 0.17 | 0.17 | 0.12 | 0.14 | 1007900 | 0.14 | | | | 100,000 |
| 2/5/2014 | 0.18 | 0.18 | 0.16 | 0.17 | 549200 | 0.17 | | | | |
| 2/4/2014 | 0.2 | 0.2 | 0.16 | 0.18 | 372000 | 0.18 | | | | 245,145 |
| 2/3/2014 | 0.2 | 0.21 | 0.16 | 0.19 | 767800 | 0.19 | | | | 235,122 |
| | | | | | 3281400 | | 967,752 | | 29.49% | |
| 1/31/2014 | 0.18 | 0.2 | 0.18 | 0.2 | 1223500 | 0.2 | | | | 200,000 |
| 1/30/2014 | 0.17 | 0.19 | 0.17 | 0.19 | 567800 | 0.19 | | | | 187,500 |
| 1/29/2014 | 0.15 | 0.18 | 0.15 | 0.17 | 724500 | 0.17 | | | | 169,305 |
| 1/28/2014 | 0.16 | 0.17 | 0.16 | 0.16 | 433300 | 0.16 | | | | |
| 1/27/2014 | 0.16 | 0.16 | 0.14 | 0.15 | 697800 | 0.15 | | | | 440,486 |
| | | | | | 3646900 | | 797,175 | | 21.86% | |

EXHIBIT 3

32

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/2014 | 0.12 | 0.14 | 0.12 | 0.14 | 1024000 | 0.14 | | | | |
| 1/23/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 447500 | 0.12 | | | | |
| 1/22/2014 | 0.11 | 0.12 | 0.1 | 0.12 | 508300 | 0.12 | | | | |
| 1/21/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 1337700 | 0.12 | | | | |
| | | | | | 3317500 | | 749,175 | PAYMENT #3 | 22.58% SPIKE | |
| 1/17/2014 | 0.12 | 0.13 | 0.1 | 0.12 | 1055800 | 0.12 | | | | |
| 1/16/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 164500 | 0.12 | | | | |
| 1/15/2014 | 0.12 | 0.12 | 0.12 | 0.12 | 807500 | 0.12 | | | | |
| 1/14/2014 | 0.11 | 0.13 | 0.1 | 0.12 | 1414500 | 0.12 | | | | |
| 1/13/2014 | 0.12 | 0.12 | 0.1 | 0.11 | 192400 | 0.11 | | | | |
| | | | | | 3634700 | | 358,891 | | 9.87% | |
| 1/10/2014 | 0.1 | 0.12 | 0.09 | 0.11 | 523400 | 0.11 | | | | |
| 1/9/2014 | 0.11 | 0.12 | 0.1 | 0.1 | 328800 | 0.1 | | | | |
| 1/8/2014 | 0.12 | 0.12 | 0.11 | 0.12 | 176500 | 0.12 | | | | |
| 1/7/2014 | 0.12 | 0.13 | 0.11 | 0.12 | 451300 | 0.12 | | | | |
| 1/6/2014 | 0.12 | 0.12 | 0.1 | 0.12 | 573800 | 0.12 | | | | 537,800 |
| | | | | | 2053800 | | 582,400 | | 28.36% | 110,500 |
| 1/3/2014 | 0.1 | 0.12 | 0.09 | 0.11 | 1099000 | 0.11 | | | | |
| 1/2/2014 | 0.12 | 0.14 | 0.1 | 0.12 | 803700 | 0.12 | | | | |
| 12/31/2013 | 0.13 | 0.14 | 0.11 | 0.13 | 609000 | 0.13 | | | | |
| 12/30/2013 | 0.13 | 0.13 | 0.13 | 0.13 | 174400 | 0.13 | | | | |
| | | | | | 2686100 | | 133,310 | | 4.96% | |
| 12/27/2013 | 0.15 | 0.15 | 0.13 | 0.14 | 137700 | 0.14 | | | | 240,819 |
| 12/26/2013 | 0.16 | 0.16 | 0.13 | 0.14 | 94900 | 0.14 | | | | 63,750 |
| 12/24/2013 | 0.13 | 0.18 | 0.12 | 0.15 | 592000 | 0.15 | | | | 103,000 |
| 12/23/2013 | 0.12 | 0.15 | 0.11 | 0.14 | 689300 | 0.14 | | | | 130,034 |

EXHIBIT 3
33

| Date | Open | High | Low | Close | Volume | Adj Close | Shares Delivered | Payment | % of Total |
|---|---|---|---|---|---|---|---|---|---|
| 12/20/2013 | 0.14 | 0.14 | 0.12 | 0.14 | 428500 | 0.14 | | | |
| 12/19/2013 | 0.13 | 0.14 | 0.13 | 0.14 | 419100 | 0.14 | | | |
| 12/18/2013 | 0.13 | 0.13 | 0.11 | 0.12 | 629000 | 0.12 | | | |
| 12/17/2013 | 0.14 | 0.14 | 0.1 | 0.11 | 460600 | 0.11 | 538,303 | PAYMENT #2 | SPIKE TO PAY FOR 35.56% FUNDING |
| 12/16/2013 | 0.14 | 0.14 | 0.12 | 0.13 | 584200 | 0.13 | | | |
| | | | | | 2521400 | | 184,250 | | 7.31% |
| 12/13/2013 | 0.15 | 0.16 | 0.14 | 0.14 | 175800 | 0.14 | | | |
| 12/12/2013 | 0.16 | 0.16 | 0.14 | 0.15 | 647400 | 0.15 | | | |
| 12/11/2013 | 0.15 | 0.16 | 0.14 | 0.15 | 336200 | 0.15 | | | |
| 12/10/2013 | 0.16 | 0.16 | 0.14 | 0.15 | 55800 | 0.15 | | | |
| 12/9/2013 | 0.17 | 0.17 | 0.15 | 0.16 | 372800 | 0.16 | | | |
| | | | | | 2088000 | | 363,371 | | 17.40% |
| 12/6/2013 | 0.19 | 0.2 | 0.17 | 0.18 | 402300 | 0.18 | | | |
| 12/5/2013 | 0.17 | 0.18 | 0.17 | 0.17 | 75000 | 0.17 | | | |
| 12/4/2013 | 0.18 | 0.19 | 0.17 | 0.19 | 318600 | 0.19 | | | |
| 12/3/2013 | 0.18 | 0.19 | 0.17 | 0.19 | 281900 | 0.19 | | | |
| 12/2/2013 | 0.17 | 0.19 | 0.17 | 0.19 | 134900 | 0.19 | | | |
| | | | | | 1212700 | | 122,000 | | 10.06% |
| 11/29/2013 | 0.18 | 0.19 | 0.17 | 0.18 | 33600 | 0.18 | | | |
| 11/27/2013 | 0.19 | 0.2 | 0.17 | 0.19 | 262200 | 0.19 | | | |
| 11/26/2013 | 0.17 | 0.19 | 0.16 | 0.19 | 230400 | 0.19 | | | |
| 11/25/2013 | 0.16 | 0.18 | 0.14 | 0.18 | 411300 | 0.18 | | | |
| | | | | | 937500 | | 20,833 | | |

(Volume note: 1513900)

EXHIBIT 3
34

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/22/2013 | 0.14 | 0.19 | 0.14 | 0.16 | 415300 | 0.16 | | | | |
| 11/21/2013 | 0.14 | 0.15 | 0.13 | 0.14 | 334200 | 0.14 | | | | |
| 11/20/2013 | 0.16 | 0.16 | 0.13 | 0.14 | 208100 | 0.14 | | | | |
| 11/19/2013 | 0.14 | 0.16 | 0.14 | 0.15 | 392100 | 0.15 | | | | |
| 11/18/2013 | 0.15 | 0.15 | 0.13 | 0.15 | 422400 | 0.15 | 4,000,000 | | | |
| | | | | | 1772100 | | | | | |
| 11/15/2013 | 0.18 | 0.18 | 0.14 | 0.16 | 631200 | 0.16 | | | | |
| 11/14/2013 | 0.18 | 0.19 | 0.17 | 0.18 | 216600 | 0.18 | | | | |
| 11/13/2013 | 0.19 | 0.19 | 0.18 | 0.19 | 453900 | 0.19 | | | | |
| 11/12/2013 | 0.23 | 0.23 | 0.18 | 0.2 | 711300 | 0.2 | | | | |
| 11/11/2013 | 0.2 | 0.23 | 0.17 | 0.23 | 436300 | 0.23 | | | | |
| | | | | | 2449100 | | | | | |
| 11/8/2013 | 0.18 | 0.2 | 0.18 | 0.19 | 1176700 | 0.19 | | | | |
| 11/7/2013 | 0.2 | 0.2 | 0.18 | 0.18 | 142900 | 0.18 | | | | |
| 11/6/2013 | 0.21 | 0.22 | 0.19 | 0.21 | 505000 | 0.21 | | | | |
| 11/5/2013 | 0.26 | 0.26 | 0.2 | 0.22 | 1014200 | 0.22 | | | | |
| 11/4/2013 | 0.29 | 0.29 | 0.25 | 0.27 | 610600 | 0.27 | | | | |
| | | | | | 3449400 | | | | | |
| 11/1/2013 | 0.29 | 0.29 | 0.26 | 0.28 | 411400 | 0.28 | | | | |
| 10/31/2013 | 0.3 | 0.3 | 0.26 | 0.29 | 421200 | 0.29 | | | | |
| 10/30/2013 | 0.28 | 0.3 | 0.27 | 0.3 | 877500 | 0.3 | | | | |
| 10/29/2013 | 0.29 | 0.31 | 0.25 | 0.28 | 1002800 | 0.28 | | | | |
| 10/28/2013 | 0.27 | 0.42 | 0.25 | 0.28 | 3633400 | 0.28 | 4,690,000 | | | |
| 10/25/2013 | 0.24 | 0.26 | 0.17 | 0.23 | 614000 | 0.23 | | | | |
| 10/24/2013 | 0.33 | 0.33 | 0.25 | 0.28 | 329100 | 0.28 | | | | |
| 10/23/2013 | 0.25 | 0.33 | 0.25 | 0.32 | 669200 | 0.32 | | | | |
| 10/22/2013 | 0.26 | 0.28 | 0.23 | 0.25 | 190700 | 0.25 | | | | |

PAYMENT #1

**24.91% AVERAGE**

*EXHIBIT 3*
*35*

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/24/2013 | 0.19 | 0.26 | 0.19 | 0.26 | 507500 | 0.26 | | | | |
| 10/18/2013 | 0.17 | 0.2 | 0.17 | 0.19 | 418500 | 0.19 | | | | |
| 10/17/2013 | 0.16 | 0.19 | 0.14 | 0.17 | 355600 | 0.17 | | | | |
| 10/16/2013 | 0.16 | 0.17 | 0.15 | 0.17 | 333200 | 0.17 | | | | |
| 10/15/2013 | 0.1 | 0.15 | 0.1 | 0.14 | 232300 | 0.14 | | | | |
| 10/14/2013 | 0.1 | 0.11 | 0.1 | 0.1 | 354300 | 0.1 | | | | |
| 10/11/2013 | 0.09 | 0.1 | 0.08 | 0.1 | 374400 | 0.1 | | | | |
| 10/10/2013 | 0.1 | 0.1 | 0.09 | 0.1 | 271700 | 0.1 | | | | |
| 10/9/2013 | 0.1 | 0.11 | 0.09 | 0.11 | 156000 | 0.11 | | | | |
| 10/8/2013 | 0.12 | 0.14 | 0.1 | 0.09 | 254800 | 0.09 | | | | |
| 10/7/2013 | 0.14 | 0.15 | 0.12 | 0.13 | 110100 | 0.13 | | | | |
| 10/4/2013 | 0.15 | 0.18 | 0.14 | 0.16 | 111500 | 0.16 | | | | |
| 10/3/2013 | 0.14 | 0.16 | 0.14 | 0.16 | 173300 | 0.16 | | | | |
| 10/2/2013 | 0.15 | 0.15 | 0.13 | 0.13 | 40800 | 0.13 | | | | |
| 10/1/2013 | 0.16 | 0.16 | 0.12 | 0.14 | 135900 | 0.14 | | | | |
| 9/30/2013 | 0.16 | 0.16 | 0.13 | 0.15 | 94100 | 0.15 | | | | |
| 9/27/2013 | 0.16 | 0.17 | 0.15 | 0.16 | 59800 | 0.16 | | | | |
| 9/26/2013 | 0.16 | 0.16 | 0.13 | 0.16 | 140200 | 0.16 | | | | |
| 9/25/2013 | 0.14 | 0.16 | 0.13 | 0.16 | 83700 | 0.16 | | | | |
| 9/24/2013 | 0.15 | 0.16 | 0.12 | 0.16 | 293200 | 0.16 | | | | |
| 9/23/2013 | 0.16 | 0.18 | 0.15 | 0.17 | 172400 | 0.17 | | | | |
| 9/20/2013 | 0.17 | 0.19 | 0.16 | 0.19 | 66100 | 0.19 | | | | |
| 9/19/2013 | 0.19 | 0.19 | 0.17 | 0.19 | 32800 | 0.19 | | | | |
| 9/18/2013 | 0.2 | 0.21 | 0.17 | 0.19 | 187300 | 0.19 | | | | |
| 9/17/2013 | 0.19 | 0.21 | 0.17 | 0.2 | 126400 | 0.2 | | | | |
| 9/16/2013 | 0.17 | 0.2 | 0.17 | 0.18 | 120800 | 0.18 | | | | |
| 9/13/2013 | 0.21 | 0.22 | 0.18 | 0.18 | 128900 | 0.18 | | | | |
| 9/12/2013 | 0.14 | 0.23 | 0.14 | 0.21 | 429800 | 0.21 | | | | |
| 9/11/2013 | 0.17 | 0.18 | 0.14 | 0.14 | 316000 | 0.14 | | | | |
| 9/10/2013 | 0.17 | 0.2 | 0.17 | 0.2 | 55300 | 0.2 | | | | |

EXHIBIT 3

36

| Date | Open | High | Low | Close | Volume | Adj Close | SHARES DELIVERED | PAYMENT | % of Total | Ironridge Volume |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/9/2013 | 0.19 | 0.2 | 0.18 | 0.2 | 130100 | 0.2 | | | | |
| 9/6/2013 | 0.19 | 0.2 | 0.17 | 0.2 | 138700 | 0.2 | | | | |
| 9/5/2013 | 0.2 | 0.21 | 0.17 | 0.19 | 155800 | 0.19 | | | | |
| 9/4/2013 | 0.23 | 0.23 | 0.17 | 0.2 | 328600 | 0.2 | | | | |
| 9/3/2013 | 0.26 | 0.26 | 0.21 | 0.24 | 80600 | 0.24 | | | | |
| 8/30/2013 | 0.24 | 0.26 | 0.24 | 0.26 | 112900 | 0.26 | | | | |
| 8/29/2013 | 0.25 | 0.27 | 0.23 | 0.25 | 51400 | 0.25 | | | | |
| 8/28/2013 | 0.26 | 0.27 | 0.23 | 0.25 | 27900 | 0.25 | | | | |
| 8/27/2013 | 0.22 | 0.28 | 0.22 | 0.25 | 55200 | 0.25 | | | | |
| 8/26/2013 | 0.25 | 0.28 | 0.19 | 0.23 | 260900 | 0.23 | | | | |
| 8/23/2013 | 0.24 | 0.27 | 0.2 | 0.27 | 405100 | 0.27 | | | | |
| 8/22/2013 | 0.28 | 0.28 | 0.22 | 0.24 | 389000 | 0.24 | | | | |
| 8/21/2013 | 0.31 | 0.31 | 0.28 | 0.28 | 137300 | 0.28 | | | | |
| 8/20/2013 | 0.31 | 0.32 | 0.29 | 0.32 | 128500 | 0.32 | | | | |
| 8/19/2013 | 0.34 | 0.34 | 0.29 | 0.33 | 44200 | 0.33 | | | | |
| 8/16/2013 | 0.31 | 0.34 | 0.3 | 0.33 | 70500 | 0.33 | | | | |
| 8/15/2013 | 0.32 | 0.34 | 0.29 | 0.31 | 164700 | 0.31 | | | | |
| 8/14/2013 | 0.36 | 0.38 | 0.31 | 0.34 | 220000 | 0.34 | | | | |
| 8/13/2013 | 0.34 | 0.37 | 0.32 | 0.37 | 190100 | 0.37 | | | | |
| 8/12/2013 | 0.28 | 0.35 | 0.28 | 0.34 | 184600 | 0.34 | | | | |
| 8/9/2013 | 0.32 | 0.33 | 0.29 | 0.31 | 236400 | 0.31 | | | | |
| 8/8/2013 | 0.38 | 0.38 | 0.33 | 0.34 | 96100 | 0.34 | | | | |
| 8/7/2013 | 0.35 | 0.38 | 0.33 | 0.37 | 135300 | 0.37 | | | | |
| 8/6/2013 | 0.36 | 0.37 | 0.33 | 0.35 | 240000 | 0.35 | | | | |
| 8/5/2013 | 0.37 | 0.39 | 0.34 | 0.37 | 158900 | 0.37 | | | | |

EXHIBIT 3
37

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

SCRIPSAMERICA, INC.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

IRONRIDGE GLOBAL LLC d/b/a IRONRIDGE GLOBAL IV, LTD., JOHN KIRLAND, BRENDAN O'NEILL and DOES NOS. 1-5

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Carlos E. Needham, Needham Law Firm, A.P.C.
28494 Westinghouse Place, Suite 213
Valencia, CA 91355
Ph: 661-843-6174

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 1367

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☒ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (11/13)   CIVIL COVER SHEET   Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | A. PLAINTIFF?<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A. DEFENDANT?<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1.  Is either of the following true? If so, check the one that applies: | C.2.  Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question D, below.<br><br>If none applies, answer question C2 to the right. ➡ | Your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question D,  below.<br><br>If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD: |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | WESTERN |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

    If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO  ☐ YES

    If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ **A.** Arise from the same or closely related transactions, happenings, or events; or

    ☐ **B.** Call for determination of the same or substantially related or similar questions of law and fact; or

    ☐ **C.** For other reasons would entail substantial duplication of labor if heard by different judges; or

    ☐ **D.** Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _Peter Nuth_   DATE: _5/22/2014_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |