UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | | | |
|---|---|---|---|
| **CASE NO.:** | CV 14-03962 SJO (AGRx) | **DATE:** | January 12, 2016 |
| **TITLE:** | ScripsAmerica, Inc. v. Ironridge Global LLC, John Kirkland, Brendan O'Neil, and Does 1-5 | | |

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers):  ORDER GRANTING DEFENDANTS IRONRIDGE GLOBAL LLC, JOHN KIRKLAND, BRENDAN O'NEILL'S MOTION FOR ATTORNEY'S FEES** [Docket No. 41]

This matter is before the Court on Defendants Ironridge Global LLC ("Ironridge"), John Kirkland, Brendan O'Neil, and Does 1-5's (collectively, "Defendants") Motion for Attorney's Fees ("Motion"), filed August 25, 2015.  Plaintiff ScripsAmerica, Inc. ("Plaintiff" or "Scrips") filed their Opposition to the Motion ("Opposition") on December 14, 2015.  (*See generally* Opp'n, ECF No. 43.)  Defendants filed their Reply on December 21, 2015.  For the following reasons, the Court **GRANTS IN PART the Defendants' Motion for Attorney's Fees in the amount of $269,260.00**.

I.      BACKGROUND

        A.      Agreement between Scrips and Defendants

Plaintiff's Second Amended Complaint ("SAC") alleges as follows.  Scrips agreed to issue shares of its common stock to Ironridge in exchange for Ironridge's undertaking to pay Scrips' outstanding accounts payable.  (*See* SAC ¶¶ 4, 11, ECF No. 30.)  The transaction was first proposed during a telephone call Scrips received from John Kirkland and Brendan O'Neil, the directors of Ironridge.  (SAC ¶¶ 4, 11.)  Kirkland and O'Neil allegedly told Scrips' chief executive officer, Robert Schneiderman, that Ironridge could pay Scrips' accounts payable, which totaled approximately $700,000, in exchange for an amount of Scrips' stock to be determined by a contractual formula.  (SAC ¶¶ 4, 11.)  The parties discussed the transaction further on September 4 and October 2, 2013.  (SAC ¶¶ 4, 11.)

During the calls, Ironridge purportedly requested that the contract memorializing the transaction include a provision for an adjustment to protect it in the event of a decline in Scrips' stock price.  (SAC ¶ 12.)  Scrips agreed to include such a provision, which gave Ironridge the right to receive more stock than the originally agreed amount if Scrips' stock price declined following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-03962 SJO (AGRx)          DATE:  January 12, 2016

consummation of the transaction.  (SAC ¶ 12.)  The adjustment mechanism was outlined, together with certain other terms, in a term sheet Ironridge prepared and gave to Scrips.  (SAC ¶ 13.)

Because the shares were unregistered, Ironridge and Scrips obtained court approval under California and federal securities laws before a transfer of the stock could take place.  On October 11, 2013, Ironridge filed a breach of contract complaint in Los Angeles Superior Court that sought to collect the accounts payable debts; it sued as the successor in interest to Scrips' creditors under purchase agreements into which it had entered with the creditors.  (Ironridge's State Court Compl. for Breach of Contract ("State Court Compl.") ¶¶ 1-6, Decl. of Shannon E. Mader in Support of Def.' Mtn to Dismiss ("Mader Decl."), ECF No. 32-1, Ex. A).  Ironridge and Scrips then submitted a stipulation to the state court that outlined the means by which the exchange transaction was to be effected.  The stipulation provided that Scrips would transfer 8,690,000 shares of stock to Ironridge in satisfaction of $686,962.08 in debt owed by Ironridge.  (SAC ¶ 16; Stipulation for Settlement of Claims ("Stipulation") ¶¶ 1-3, ECF No. 30-3. )  The shares were to be "unrestricted and freely tradeable exempted shares" of Scrips common stock.  (Stipulation ¶¶ 1-3.)  The Stipulation stated the shares had to be capable of being "immediately resold . . . without restriction," and noted that Ironridge could "sell any of its shares of [Scrips] common stock issued pursuant to the [stipulation] at any time."  (Stipulation ¶ 6.)  The stipulation warned that issuance of the shares could "have a dilutive effect [on Scrips' stock], which [might] be substantial."  (Stipulation ¶ 11.)

The Stipulation provided that if at any point during the calculation period the shares issued to Ironridge dropped below "any reasonably possible [f]inal [a]mount," or if Scrips shares closed below 80% of the closing price on the trading day prior to entry of an order on the stipulation, Ironridge was entitled to request the issuance of additional shares.  (Stipulation ¶ 8.)  At the conclusion of the calculation period, if the total value of the initial issuance and subsequent issuances was less than the final amount, Scrips was required to issue further shares so that the total number of shares issued equaled the final amount; conversely, if the number of shares issued to Ironridge exceeded the final amount, Ironridge was required to return the excess shares to Scrips.  (Stipulation ¶ 10.) )  Despite the fact that Kirkland, O'Neil, and Schneiderman allegedly discussed the issue, there is no provision in the stipulation requiring that Ironridge's sales of Scrips shares not exceed 10% of the daily trading volume on any given day.  (Stipulation ¶ 15.)

On November 8, 2013, Superior Court Judge Rolf M. Treu entered an order on the parties' Stipulation.  (*See generally* Order for Approval of Stipulation, Stipulation Ex. F.)

    B.    <u>Attorney's Fees Provision</u>

The Stipulation includes two provisions related to the instant Motion for attorney's fees:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 14-03962 SJO (AGRx)</u>          DATE:  <u>January 12, 2016</u>

Paragraph 15 of the stipulation states as follows: "[Scrips] shall indemnify, defend and hold [Ironridge] and its affiliates harmless with respect to all claims, actions and proceedings arising out or related to this Stipulation or the Order, including without limitation, any claim or action brought derivatively or by any one or more shareholders or creditors of [Scrips]."  (Stipulation ¶ 15.)

Paragraph 17 states in relevant part: "The prevailing party in any proceeding required to enforce this Stipulation, the Order, or any judgment or order issued thereon, shall be awarded reasonable attorney fees, costs and expenses arising out of or relating thereto.  Except as expressly set forth herein, each party shall bear its own attorneys' fees, costs and expenses."  (Stipulation ¶ 17.)

      C.    <u>Scrips' Allegations</u>

Scrips alleges that, after the state judge approved the Stipulation, Ironridge and the individual Defendants sold an amount of Scrips stock that exceeded ten percent of all sales on that day.  (SAC ¶ 21-22.)  Defendants purportedly made these sales with the intent and purpose of manipulating the market to reduce the price of Scrips' stock so that the number of shares to which it was entitled under the agreement would increase.  Scrips' also alleged that Defendants employed manipulative trading devices, including "marking the close" transactions and "bid whacking," to reduce Scrips' stock price.  (SAC ¶ 21-22.)

Based on the decline in Scrips' share price, Ironridge filed an *ex parte* application in state court for an order compelling the issuance of additional shares under the May 6, 2014 stipulation.  Judge Treu entered an order that again enforced the Stipulation, and directed Scrips to issue an additional 1,646,008 shares of common stock to Ironridge pursuant to an adjustment mechanism set forth in the Stipulation.  (Order Enforcing Prior Order for Approval of Stipulation for Settlement of Claims ("Enforcement Order") 1-2, Mader Decl., Ex. I.)

      D.    <u>Prior Proceedings Before this Court</u>

On May 22, 2014, Scrips filed the instant action, alleging claims against Defendants for breach of contract, tortious bad faith, violation of Rule 10b-5, and declaratory relief.  Scrips alleged that Ironridge's sale of Scrips stock violated the Stipulation and represented an effort to manipulate the market.  Scrips sought compensatory and punitive damages, and a declaration that it need not issue the additional 1,646,008 shares that the Superior Court had ordered it to issue.  (SAC ¶ 26.)

On November 3, 2014, this Court dismissed Scrips' declaratory relief claim under the *Rooker-Feldman* doctrine.  The Court also denied defendants' motion to dismiss on *Younger* abstention grounds, and stayed Scrips' breach of contract, tortious bad faith, and declaratory relief claims under *Colorado River*.  Finally, the Court granted Defendants' motion to dismiss Scrips's Rule 10b-5 claim with leave to amend.  (Order Granting in Part and Denying in Part Mtn. to Dismiss and Granting Mtn. to Stay, ECF No. 18.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 14-03962 SJO (AGRx)</u> | **DATE:** <u>January 12, 2016</u> |

After Scrips amended the complaint twice, on August 11, 2015, the Court dismissed with prejudice the SAC in its entirety. (*See generally* Order Granting Defs.' Mtn. to Dismiss, ECF No. 39.) Defendants now seek the attorneys' fees incurred in defending against Scrips's various claims.

II.     <u>DISCUSSION</u>

    A.     <u>Choice of California Law</u>

As a threshold matter, the Court notes that California law applies to the instant attorneys' fees Motion. "In an action involving state law claims, [the court] appl[ies] the law of the forum state to determine whether a party is entitled to attorneys' fees, unless [that law] conflicts with a valid federal statute or procedural rule." *MRO Communications, Inc. v. AT & T Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999).

Under California law, "[California Civil Code §] 1717 is the applicable statute when determining whether and how attorney's fees should be awarded under a contract." *Sears v. Baccaglio*, 60 Cal. App. 4th 1136, 1157 (1998). Civil Code § 1717 provides as follows:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

    B.     <u>Prevailing Party</u>

The Court holds that Defendants are the prevailing parties in this litigation. The Court dismissed Plaintiff's SAC with prejudice, ruling in favor of Defendants.

    C.     <u>Applicability of Attorneys' Fees Clauses of the Stipulation</u>

The Court next determines whether the instant case, which was filed in federal district court, constitutes a proceeding seeking to enforce the Stipulation entered into in State Court. Paragraph 17 of the Stipulation states as follows:

> "The prevailing party in any proceeding required to enforce this Stipulation, the Order, or any judgment or order issued thereon, shall be awarded reasonable attorney fees, costs and expenses arising out of or relating thereto. Except as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-03962 SJO (AGRx)            DATE: January 12, 2016

expressly set forth herein, each party shall bear its own attorneys' fees, costs and expenses."

Scrips does not dispute that the breach of contract, tortious bad faith, or declaratory relief claims constitute proceedings to enforce the Stipulation. (Opp'n 7.) Scrips, however, argues that the federal securities fraud claim, under Rule 10b-5, did not seek to enforce the Stipulation. (Opp'n 7-10.) Defendants respond that the entirety of the proceedings in this Court constituted an action to "enforce the stipulation." It further argues that even if the 10b-5 claim, standing alone, would not constitute an action to "enforce the stipulation," Defendants would be entitled to a fee award for the entire action because all of Scrips' claims "involve[d] a common core of facts." (Mtn. 11.)

The Court agrees with Defendants. Under California law, a party need not apportion attorneys' fees where claims are "inextricably intertwined, making it impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units." *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1111 (1996) (internal quotations and citations omitted). Here, Scripps' 10b-5 claim initially raised the same central issue as the breach of contract and tortious bad faith claims, "that Ironridge sold more shares than it purportedly agreed to sell within a given period, which violated an alleged oral agreement not to sell an amount of Scrips stock that exceeded 10% of the total shares traded on any given day." (Order Dismissing Compl. at 46-47.) Scrips subsequently added additional arguments supporting its 10b-5 claim in the first and second amended complaints. Scrips argued that Ironridge's actions were fraudulent and misleading because they utilized multiple brokerage firms, that the Section 13(d) disclosure statement allegedly contained inaccuracies, that Defendants allegedly engaged in market manipulation by selling the Scrips stock, and that the adjustment mechanism of the Stipulation was too vague. (Order Dismissing SAC, 25-36.) These additional arguments essentially boil down to the same allegations initially made by Plaintiff. According to Scrips, Defendants sold stock in contravention of oral discussions that the parties had prior to entering the Stipulation, which breached the Stipulation and constituted market manipulation. The facts necessary to prove these claims are the exact same. Therefore, Defendants are entitled to attorneys' fees for the entirety of the present action, under Paragraph 17 of the Stipulation.

    C.    Reasonableness of Attorney's Fees

Having determined that Defendants are a prevailing party and are entitled to attorneys' fees, the Court next analyzes if the attorneys' fees requested by Defendants are reasonable. *See In re SNTL Corp.*, 571 F.3d 826, 842 (9th Cir. 2009); see also *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (once a party has established its entitlement to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable'").

To determine whether the fees sought are reasonable under California and federal law, the Court first calculates the "lodestar figure" by multiplying "the number of hours reasonably expended on the litigation [ ] by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *Cataphora, Inc. v. Parker*,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 14-03962 SJO (AGRx) | **DATE:** January 12, 2016 |

848 F.Supp.2d 1064, 1069 (N.D. Cal. 2012) ("In computing attorney's fees pursuant to contract under California or federal law, courts follow the 'lodestar' approach"); *PLCM Group v. Drexler*, 22 Cal.4th 1084, 1095 (2000) ("[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate"). The Court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services. *See Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003); *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). The party requesting fees bears the burden of adducing "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984); *Jordan*, 815 F.2d at 1263.

    1.    Hourly Rate

Defendants were represented in this action by Gibson, Dunn & Crutcher LLP ("Gibson Dunn"). Three Gibson Dunn attorneys assisted with various aspects of the litigation: (1) Gibson Dunn partner Dean Kitchens; (2) Gibson Dunn associate Shannon Mader; and (3) Gibson Dunn associate Chelsea Norell. (*See* Decl. of Dean Kitchens in Support of Defs.' Mtn. for Atty's Fees ("Kitchens Decl.") ¶ 11, ECF No. 41-1.) Defendants seek the following hourly rates for these attorneys:

| ATTORNEY | HOURLY RATE |
|---|---|
| Dean Kitchens | $1,125 (2015) / $1,080 (2014) |
| Shannon Mader | $770 (2015) / $740 (2014) |
| Chelsea Norell | $625 (2015) / $555 (2014) |

Defendants also seek fees for the work completed by two Gibson Dunn paralegals and one Gibson Dunn research analyst: (1) Gibson Dunn paralegal Lolita C. Gadberry; (2) Gibson Dunn paralegal Suzanne Wilson; and (3) Gibson Dunn research librarian Erin Kurinsky. (Kitchens Decl. ¶ 11.) Defendants seek the following hourly rates for these individuals:

| PARAPROFESSIONAL | HOURLY RATE |
|---|---|
| Lolita C. Gadberry | $395.00 |
| Suzanne Wilson | $395.00 |
| Erin Kurinsky | $210 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 14-03962 SJO (AGRx)</u>     **DATE:** <u>January 12, 2016</u>

Scrips responds that the hourly rates are excessive, in part because the rates constitute those that existed at the "pinnacle of the market," rather than the rates typically charged by attorneys in the relevant specialty and geographic region. (Opp'n 13.)

The Court agrees with Scrips in part. Based on the Court's familiarity with prevailing market rates in the Central District, the Court reduces the hourly rates as follows:

| ATTORNEY/PROFESSIONAL | HOURLY RATE |
|---|---|
| Dean Kitchens | $950 |
| Shannon Mader | $700 |
| Chelsea Norell | $450 |
| Lolita C. Gadberry | $350 |
| Suzanne Wilson | $350 |
| Erin Kurinsky | $200 |

These rates are in line with the Thomson Reuters exhibit submitted by Defendants, which summarizes prevailing hourly rates based on specialty and geographic region in this disctrict. (*See generally* Thomson Reuters Peer Monitor Report, Kitchens Decl., Ex. D, ECF No. 41-5.)

      2.    <u>Hours Billed</u>

A court may award attorneys' fees only if it concludes that the hours billed were reasonably expended litigating the case. "In determining reasonable hours, [the party requesting fees] bears the burden of submitting detailed time records justifying the hours claimed to have been expended."

Defendants contend they are entitled to fees for 413.7 hours of work, and proffer a summary of the contemporaneous billing records of the Gibson Dunn attorneys and paralegals who worked on the matter. (*See* Am. Att'ys' Fees Summ., Decl. of Chelsea Norell in Support of Defs.' Reply in Support of Mtn. for Att'y's Fees ("Norell Decl.") at 14, Ex. A, ECF No. 44-2.) The 413.7 hours number reflects 409.3 hours of work performed by Gibson Dunn attorneys and 4.4 hours of work performed by the Gibson Dunn paralegals and research analyst. (*See* Am. Att'ys' Fees Summ. at 14.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 14-03962 SJO (AGRx)          **DATE:** January 12, 2016

|  | 2014 HOURS | 2014 RATE | 2015 HOURS | 2015 RATE | TOTAL |
|---|---|---|---|---|---|
| Dean J. Kitchens (Partner) | 34.70 | $1,080 | 46.50 | $1,125 | $89,788.50 |
| Shannon Mader (Associate) | 117.70 | $740 | 54.40 | $770 | $128,986.00 |
| Chelsea Norell (Associate) | 66.80 | $555 | 89.20 | $625 | $92,824.00 |
| Lolita Gadberry (Paralegal) | -- | -- | 1.10 | $395 | $434.50 |
| Suzanne Wilson (Paralegal) | -- | -- | 2.70 | $395 | $1,066.50 |
| Erin Kurinsky | -- | -- | 0.60 | $210 | $147.00 |
| **TOTAL** | **219.2** |  | **194.5** |  | **$313,225.50** |

Scrips does not argue that the hours billed were unreasonable and necessary to defend against Scrips' case in the entirety but instead, focuses on the argument that the hours billed were not properly apportioned. This argument appears to be based in part on the notion that Defendants should not be entitled for attorneys' fees based on defending the securities fraud. The Court addressed this argument above and concluded that Defendants are entitled to recover fees incurred defending the entirety of Scrips' claims.

Taking into consideration the adjusted hourly rate, the lodestar is reflected below. Defendants are entitled to a final attorneys' fee award of $269,260.00, as summarized in the table below.

|  | HOURS | RATE | TOTAL |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 14-03962 SJO (AGRx)</u>   **DATE:** <u>January 12, 2016</u>

| | | | |
|---|---|---|---|
| Dean J. Kitchens | 81.2 | $950 | $77,140 |
| Shannon Mader | 172.1 | $700 | $120,470 |
| Chelsea Norell | 156 | $450 | $70,200 |
| Lolita Gadberry | 1.1 | $350 | $385 |
| Suzanne Wilson | 2.7 | $350 | $945 |
| Erin Kurinsky | 0.6 | $200 | $120 |
| **TOTAL** | **413.7** | | **$269,260** |

III.   <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Attorney's Fees in the amount of **$269,260.00**.

IT IS SO ORDERED.